**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JAVON D. JACKSON,<br><br>Defendant. | Crim. No. 21-38-LPS |

## <u>MEMORANDUM ORDER</u>

WHEREAS, Defendant Javon D. Jackson pled guilty to one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (*see generally* D.I. 34);

WHEREAS, on February 4, 2022, U.S. Probation and Pretrial Services filed a final presentence investigation report (D.I. 43) ("PSR");

WHEREAS, Jackson and the government submitted initial briefing on Jackson's objections to the PSR, including his objection that Delaware's controlled substances statute is overbroad, such that a violation of it should not qualify as a controlled substance offense for purposes of the career offender enhancement in the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") (*see generally* D.I. 42, 44, 46, 47);

WHEREAS, on February 11, 2022, the Court heard oral argument (*see* Feb. 11, 2022 Tr.), rejected Jackson's first overbreadth argument (*see* D.I. 42 at 2-5), and ordered supplemental briefing on Jackson's second overbreadth argument (*see id.* at 5-9);

WHEREAS, the parties submitted supplemental briefing on Jackson's second overbreadth argument (*see generally* D.I. 49, 50, 51, 52, 53);

1

WHEREAS, the Court has carefully considered all the arguments presented by the parties in the initial and supplemental briefing, as well as their arguments during the February sentencing hearing;

**NOW, THEREFORE, IT IS HEREBY ORDERED** that, for the reasons given below, Jackson's objection to the PSR based on his second overbreadth argument is **OVERRULED**. Because Jackson qualifies as a career offender, the Guidelines applicable to him, and from which the Court will begin its analysis in determining an appropriate sentence, are 262 to 327 months imprisonment. (*See* PSR ¶¶143-44)

1.    Under Guidelines § 4B1.1(a), a defendant qualifies as a career offender if he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." The Guidelines define a "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). To determine whether a state conviction is a qualifying predicate "controlled substance offense," courts employ the categorical approach or modified categorical approach and compare the state statute with the generic definition in the Guidelines. *See United States v. Williams*, 898 F.3d 323, 333 (3d Cir. 2018).

2.    Jackson argues that his May 2017 conviction for possession with intent to deliver heroin (*see* PSR ¶¶ 82-88) does not qualify as a "controlled substance offense" under the Guidelines because the schedule of controlled substances under Delaware law is broader than the

schedule of federally controlled substances.   (D.I. 42 at 5-9)   The statute Jackson pled guilty to

violating provides, in pertinent part, that "any person who . . . [m]anufactures, delivers, or

possesses with the intent to manufacture or deliver a controlled substance in a Tier 2 quantity . . .

shall be guilty of a class C felony."   16 Del. C. § 4753 (2017); *see also* D.I 47-2.   Another

statutory provision lists ten options for a "Tier 2 quantity" of a controlled substance, including "2

grams or more of any morphine, opium or any salt, isomer or salt of an isomer thereof, including

heroin, as described in § 4714 of this title, or of any mixture containing any such substance."   16

Del. C. § 4751C(4)(b) (2017); *see also* D.I. 47-3.

      3.    To advance his overbreadth argument, Jackson contends that Delaware's

controlled substances statute is indivisible, as it sets out alternative means of committing the

same offense.   (*See generally* D.I. 51, 52)   The government, by contrast, contends that the

statute is divisible by drug type, meaning that the type of controlled substance is an element of

the offense that the prosecution must prove beyond a reasonable doubt.   (*See generally* D.I. 50,

53)   The Court agrees with the government: Delaware's controlled substances statute is

divisible.

      4.    Divisible statutes "list elements in the alternative, and thereby define multiple

crimes."   *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016); *see also Descamps v. United*

*States*, 570 U.S. 254, 262 (2013).   "The first task for a sentencing court faced with an

alternatively phrased statute is . . . to determine whether its listed items are elements or means."

*Mathis*, 136 S. Ct. at 2256.   To make that determination, the sentencing court first looks at

whether state law characterizes the items as elements or means.   *Id.*   If a state court decision is

on point, "a sentencing judge need only follow what it says."   *Id.*   Otherwise, the statute itself

"may resolve the issue." *Id.* For example, alternatives that carry different punishments are necessarily elements, not means. *See id.* Finally, "if state law fails to provide clear answers," the sentencing court may look to "the record of a prior conviction itself." *Id.* For instance, if an indictment or jury instructions single out a particular alternative, this suggests that the alternative is an element of the crime. *See id.* at 2257.

5.      To answer the elements-or-means question with respect to the state offense for which Jackson was convicted, 16 Del. C. § 4753(1), the Court begins its analysis with relevant state court decisions. The Delaware Supreme Court has consistently treated possession with intent to deliver ("PWID") specific controlled substances as distinct crimes. For example, that court has held that "PWID Cocaine and PWID Marijuana are two distinct offenses because each requires proof of a fact that the other does not." *Gilmore v. State*, 135 A.3d 77, 77 (Del. 2016); *see also Nance v. State*, 903 A.2d 283, 287 (Del. 2006) (rejecting argument that PWID Cocaine and PWID Marijuana involve same conduct because "[t]he promulgation of two drug statutes is a clear indication that the legislature intended there to be two separate punishments for the two acts"); *see also Blake v. State*, 65 A.3d 557, 559 (Del. 2013) (explaining that defendant was charged with both PWID Cocaine and PWID Heroin). The Delaware Supreme Court's consistent treatment of these crimes as distinct strongly suggests that the identity of the drug is an element of the crime.[1]

---

[1] If the identity of the drug is an element of the crime, then the State must prove beyond a reasonable doubt, to each of the jurors, that the defendant possessed with intent to deliver (for example) the same drug. A conviction could not be grounded, for instance, in a finding by half the jurors that a defendant committed PWID Cocaine if the other half found that he committed PWID Heroin. On the other hand, if the identity of the drug is merely a means of violating the statute, then the jury does not need to unanimously agree as to the identity of the drug in order to

The Delaware Superior Court's decision in *State v. Adams*, 364 A.2d 1237 (Del. Super. Ct. 1976), supports the same conclusion.   In *Adams*, the Court considered whether four charges – PWID Marijuana, PWID Methamphetamine, PWID Phencyclidine, and PWID Methaqualone, all of which were violations of an earlier version of 16 Del. C. § 4752 – were duplicative of one another (for purposes of evaluating a double jeopardy motion).   *See id.* at 1238.   The court rejected the defendant's argument that § 4752 is a single offense regardless of drug type and, thus, declined to consolidate the four charges.   *See id.* at 1238-40.   The Court reasoned that § 4752's reference to "a controlled substance" provided "some indication of a legislative purpose to make the crime apply to the individual substance rather than to the generic group collectively."   *Id.* at 1239.

The same is true for the relevant version of § 4753(1), which prohibits (among other things) possession with intent to deliver "a controlled substance."   The *Adams* Court explained that § 4752's "emphasis [was] upon the substance as well as upon the act," unlike a statute such as the larceny statute, which focuses exclusively on the act and not on the identity of the stolen object.   *See id.* ("The emphasis [in § 4752] is upon the substance as well as upon the act or action, the individual substance being at least as important as the act itself.   This is in contrast to statutes such as larceny or theft, where the thrust is the act of the illegal taking, and the particularization of the item taken is secondary.").   Likewise, the relevant version of § 4753(1) is intended to prohibit conduct with respect to particular substances.   Thus, "[p]roof of the

---

convict a defendant; they need merely all agree that he possessed with intent to deliver some controlled substance.   In the latter instance, Jackson might have a stronger argument that the state offense is broader than the generic controlled substance offense and, therefore, does not qualify as a predicate offense for purposes of applying the career offender enhancement.

5

identity of the item possessed is an element of the offense," and an indictment under § 4753(1)

"must specify the drug involved." *See id.* at 1240.   Although Jackson is correct that Delaware's

controlled substances statute has been significantly revised since *Adams* was decided (*see* D.I. 52

at 2), he has pointed to no indication that Delaware courts treat violations involving different

drugs as the same crime.[2]

      6.    Although the state court decisions cited above are sufficient to answer the

elements-or-means question here, in the alternative the Court turns to the language of the statute

itself.   *See Mathis*, 136 S. Ct. at 2256.   The statutory language leads to the same conclusion,

although it does not, perhaps, compel it.   The Supreme Court has explained that, "[i]f statutory

alternatives carry different punishments, then . . . they ***must*** be elements."   *Mathis*, 136 S. Ct. at

2256 (emphasis added).   Consistent with this guidance, the Third Circuit has held that the

"statutory provision of the same punishment, regardless of which alternative was involved in a

crime, ***could*** indicate that the alternatives are means," not elements.   *United States v. Aviles*, 938

F.3d 503, 513 (3d Cir. 2019) (emphasis added).   Here, § 4753 does not provide different

punishments for different drugs, so this principle does not conclusively establish that the identity

---

    [2] Jackson's reliance on *Kelley v. State*, 222 A.3d 1043 (Del. 2019), is unpersuasive.
(*See* D.I. 51 at 8)   In that case, the Delaware Supreme Court made a passing reference to "the
elements of drug dealing under § 4753(2)."   *Kelley*, 222 A.3d at 1043.   Because the court was
focused on the broader distinction between class C and class D felonies, it did not parse the
elements of § 4753(2) like it did in the other cases cited above.

    By contrast, the government's reliance on Delaware cases considering double jeopardy is
entirely proper.   (*See* D.I. 53 at 1) ("Delaware case law has consistently held in the double
jeopardy arena that the state can charge the possession of multiple controlled substances without
violating double jeopardy principles – meaning that the controlled substances must be
elements.")   These cases could not have come out the way they did (generally, finding no
violation of double jeopardy) if the identities of the controlled substances at issue were means as
opposed to elements of the offenses charged.

of the drug is necessarily an element of the crime; that fact alone does not, however, definitively establish that the identity of the drug is just a means of committing the offense.   As the government correctly states, "[t]he Court in *Mathis* did not rule that elements must have different punishments."   (D.I. 50 at 5)

7.   With regard to step two, the Supreme Court has further explained that "if a statutory list is drafted to offer illustrative examples, then it includes only a crime's means of commission." *Mathis*, 136 S. Ct. at 2256 (internal quotation marks omitted).   Here, the drugs listed in § 4751C(4) are not just "illustrative examples" of ways in which § 4753(1) may be violated.   Instead, § 4751C(4) lists the *only* options for weights of certain substances that qualify as Tier 2 quantities that may be used to convict someone of violating § 4753(1). *See, e.g.*, *United States v. Henderson*, 841 F.3d 623, 630 (3d Cir. 2016) (explaining that sex crimes in certain Maryland statute were means because list was "non-exhaustive").   Thus, again, the statutory language is not definitively "means" language and, to the contrary, appears to be "elements" language.   At bottom, the statutory language supports a conclusion that the identity of the controlled substance in § 4753(1) is an element and not a means of committing the offense.

8.   In any event, even if the first two steps of the analysis did not resolve the issue, the third step again leads to the conclusion that the identity of the drug is an element of the offense of which Jackson was convicted.   This is clear from the documents the Court is permitted to consider. *See Mathis*, 136 S. Ct. at 2256-57.   That record establishes that Jackson was charged with and pled guilty to dealing heroin in a Tier 3 quantity, in violation of 16 Del. C. § 4753(1).   (D.I. 47-4) (plea agreement)   If heroin were just one of many means for committing

7

the generic crime of possession with intent to deliver under § 4753(1), then Jackson's plea agreement would not have specified that his offense involved heroin.   Moreover, the Delaware Superior Court's model jury instructions for § 4753(1) list the identity of the drug as the first element of the crime that the government must prove beyond a reasonable doubt.   (D.I. 50 Ex. A) ("In order to find Defendant guilty of this charge, you must find that the State has proved the following elements beyond a reasonable doubt: 1. The substance possessed was [drug] . . . .") Jackson argues that the Third Circuit has "criticized the use of jury instructions to answer the question of whether a specific controlled substance is a means or an element."   (D.I. 52 at 4) (citing *Hillocks v. Attorney General*, 934 F.3d 332 (3d Cir. 2019))   In *Hillocks*, however, the government's argument regarding jury instructions was inconsistent with an earlier Third Circuit decision.   *See* 934 F.3d at 342-43.   There is no such inconsistency here.   Moreover, under the relevant jury instructions in *Hillocks*, the judge could allow the jurors to choose between different facts as the basis for their verdict.   *See id.* at 343.   Here, the model jury instructions for § 4753(1) appear to require the government to prove to all the jurors that the defendant possessed a particular drug, not just one of multiple possible drugs.   (*See* D.I. 50 Ex. A)[3]

9.   The Court's conclusion that § 4753(1) is divisible by drug type is further supported by *Henderson*.   In *Henderson*, 841 F.3d at 625, the Third Circuit held that Pennsylvania's controlled substances statute is divisible by drug type for purposes of

---

[3] Jackson relies on *Patterson v. State*, 925 A.2d 504 (Del. 2007), for the proposition that "[t]he identity of [the] controlled substance appears as a means of committing the criminal offense" because the government need not prove the identity of the controlled substance.   (*See* D.I. 52 at 1-2)   The Delaware model jury instructions belie Jackson's premise regarding what the government must prove.

determining whether a violation qualifies as a "serious drug offense" under the Armed Career Criminal Act.[4]   The Pennsylvania statute prohibits certain activities with respect to "Schedule I or II" drugs, as defined in a related statutory provision.   *Id.* at 626-27.   Applying the three-step framework from *Mathis*, the Third Circuit first noted that decisions of the Pennsylvania Superior Court treat the identity of the drug as an element of the crime.   *See id.* at 628-29.   Next, the Third Circuit explained that, by cross-referencing Schedule I and II, the language of the statute itself creates "several alternative elements," "not separate means of commission."   *Id.* at 630. Hence, the Pennsylvania statute provides a "clear answer" to the elements-or-means question because it "provides an exhaustive list of *all* specific controlled substances" and "does *not* attempt to illustrate the different means of carrying out the offense – *i.e.*, the countless ways people may manufacture, distribute, or possess the specified controlled substances."   *Id.* at 630-31.   Lastly, the Third Circuit noted that the documents in the record confirmed that the defendant was charged with and convicted of possessing a particular drug (heroin).   *See id.* at 631-32.   For all the reasons explained above, the Third Circuit's reasoning in *Henderson* applies here and supports the Court's conclusions.[5]

---

[4] *See also United States v. Miller*, 480 F. Supp. 3d 614, 618 n.3 (M.D. Pa. 2020) ("Because [35 Pa. Stat. Ann. §] 780-113(a)(30) is divisible by drug type, we reject [the defendant]'s broader argument that a mismatch between the state and federal schedules renders Section 780-113(a)(30) – as a whole – categorically overbroad.").

[5] The Court acknowledges the Second Circuit has held that a provision in New York's controlled substances statute is not divisible by drug type, so a violation of it cannot qualify as an "aggravated felony" that might bar someone from seeking cancellation of removal and asylum under the immigration laws.   *See Harbin v. Sessions*, 860 F.3d 58, 61 (2d Cir. 2017); *see also United States v. Townsend*, 897 F.3d 66, 74 (2d Cir. 2018) (reaffirming indivisibility of New York statute in context of sentencing enhancement).   Unlike the Third Circuit decisions cited in this Memorandum Order, *Harbin* and *Townsend* are not binding on this Court (even assuming the New York statute is fairly analogous to the Delaware statute).

10.    Because Delaware's controlled substances statute is divisible by drug type, the Court applies the modified categorical approach to determine whether Jackson's conviction under the Delaware statute qualifies as a controlled substance offense under U.S.S.G. §§ 4B1.1(a) and 4B1.2(b).   *See Descamps*, 570 U.S. at 257 (explaining modified categorical approach).   Having undertaken this analysis, the Court concludes that Jackson's predicate conviction under 16 Del. C. § 4753(1) is no broader than the Guidelines' definition of a generic controlled substance offense.   In arguing the opposite, Jackson points to (among other things) a "catch all" provision in § 4751C(4)(h), which criminalizes conduct involving "substance[s] as described in § 4714," "designer drug[s] as described in § 4701(9)," and "any mixture" containing any of those substances.   (*See* D.I. 42 at 5; Feb. 11, 2022 Tr. at 10)   Jackson was not, however, charged with and convicted of possessing a designer drug or otherwise violating this "catch all" provision.   (*See* D.I. 47-4)   Jackson was charged with and pled guilty to possessing heroin with the intent to deliver it, an offense which is no broader than a generic controlled substance offense.   Thus, Jackson's overbreadth argument lacks merit.

11.    In sum, Jackson's arguments do not provide a meritorious basis for his objections to the presentence investigation report.   Because possession with intent to deliver heroin under 16 Del. C. § 4753(1) (2017) is a "controlled substance offense" within the meaning of the U.S. Sentencing Guidelines, Jackson's PSR properly determined that Jackson qualifies as a career offender.   He will be sentenced as such.

March 8, 2022
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE